Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Mark Anthony Neal. Your Honors, as the government concedes, Rule 11 does not require a defendant to affirmatively admit to every element of an offense in order to enter a guilty plea. All that is required is that there be sufficient evidence, somewhere in the record, to support a factual basis. Here, because the district court misapprehended the requirements of Rule 11 and there was sufficient evidence in the record to support a factual basis, Mr. Neal's conviction should be vacated. What specifically was the evidence in the record at that point regarding the citizenship issue? At that point, we had a stipulated factual basis in the written guilty plea agreement. But then Mr. Neal waffled on that. Well, he indicated that he could not affirmatively admit under oath that he was not a United States citizen. Okay. But he did not disavow the factual basis that was included in the guilty plea agreement. There was no dispute that the facts in the guilty plea agreement were correct. Wouldn't a reasonable judge read the waffling as maybe pulling back from the written stipulation he had made at some point earlier? I mean, that's part of it. My real question is, was there other stuff besides that? I mean, I know that was there. Certainly. Mr. Neal himself argued to the court that the government had a birth certificate indicating that he, in fact, was born in Belize. He was not disputing that the government had that evidence. He was, in fact, affirmatively telling the court, you know, the government has birth paper that says I was born in Belize. The government had indicated that Mr. Neal had admitted to immigration authorities that he was a citizen of Belize. What does that mean? Does that mean there was something in the record that stated something? That when Mr. Neal was interviewed by immigration authorities at the prison, he, in fact, had made a statement saying that, yes, he, in fact, was a citizen of Belize and not a citizen of the United States. In any event, is the ultimate question, what was in the record or what could have been in the record, had, for example, the judge said to the government, okay, what's your factual basis, which he didn't do? Exactly. I think that's exactly right. That, in fact, it's not necessarily what was there at the time, but what could have been there in the record. He just asked the government. Exactly. And they essentially could have told them about what they eventually put on in trial, which obviously must have been a factual basis because they won. Exactly. In fact, the only real evidence that they put up to establish that he, in fact, was a citizen of Belize was this birth certificate that Mr. Neal had already told the court the government had. Also, there was no dispute that Mr. Neal had been deported on multiple occasions from the United States. I mean, typically the United States does not deport United States citizens, so clearly there had been a finding in an immigration proceeding that Mr. Neal was not a United States citizen. So all of this was well known to the court. The only disputed issue was alienage, and the evidence, I think, in fact, was pretty overwhelming that he was not a United States citizen. So what do you read the district judges having done? There seems to be a dispute between the parties. The government seems to think that the district courts simply held that there was just no factual basis, however established. And you seem to be saying that the district judge took the view that unless the defendant admitted to it, he wasn't going to take the plea, even if there was a factual basis, which are two different things. There are two different things. And, frankly, I'm not un — I don't understand why the government makes the argument that it makes. You know, the court here clearly indicated that it could not take, it could not establish a factual basis unless the defendant affirmatively admitted that he was not a United States citizen. And, I mean, he said on multiple occasions, you know, what am I supposed to — I can't take your plea unless you make this admission. And I'm — Kagan. It's a practical matter, but that had been true because of the government's — is the problem that — one of the things that troubled me is the government said that they couldn't agree to an — essentially an Alfred plea without permission. So was what he was really saying was, well, this plea agreement doesn't seem to be any good unless you make the admission? Well, I don't think the Court's addressing specifically the plea agreement. It was just addressing the plea itself. And, you know, there was some suggestion after the Court had already gone through apparently for more than a half-hour, this back-and-forth as to whether or not Mr. Neal could affirmatively admit that he was not a United States citizen. After going back and forth on that, then there was a suggestion by defense counsel, well, would the Court perhaps take this as an Alfred plea? And the Court said, well, no, unless the government. And the government said, you know, that's not something that we can agree to. But do you think it was an Alfred plea in the end? Well, I'm not sure it was. I mean, a traditional Alfred plea is one where a defendant maintains his innocence. Mr. Neal was not maintaining his innocence. What he was doing was saying I cannot admit under oath to this one particular fact. In fact, the Court actually told Mr. Neal, look, you know, you have to tell the truth. If you testify that you're not a United States citizen and that turns out not to be true, you can be prosecuted for perjury. So we're not going to admit under oath. Nobody could say for sure where they were born. They know what they were told, but that's the best they know. Well, exactly. Exactly. And then that's exactly the problem we have here. I mean, Mr. Neal believed he was born here. That's what he had been told. He was raised as a child both in Belize and here. And he had every reason to believe it. But as he said, look, the evidence from the government seems to suggest that I was, in fact, born in Belize. I just cannot admit that fact under oath. So, I mean, we would submit that, based on this Court's case law, since under Vasquez-Ramirez, the defendant has the absolute right to enter a guilty plea. And this was what Mr. Neal was attempting to do, that the Court was obligated, assuming that there was sufficient evidence to support the fact of the case. What about our case law? We seem to be somewhat all over the lot, don't we? I'm sorry, Your Honor? Isn't our case law a bit all over the lot in terms of O'Brien and Vasquez and Messina-Flores and so on? Well, certainly, I mean, there's this recognition that there's some tension with respect to O'Brien. O'Brien is out there and says there's no absolute right to enter an Alfred plea. When you look at O'Brien, O'Brien cites two case laws from pre-1975, when, in fact, courts had the discretion not to accept a guilty plea. So I think O'Brien, you know — But it was accurate. But it was decided accurately. That's correct. That's correct. But also, as I said, I'm not sure that we're dealing specifically with the Alfred plea O'Brien was talking about and what most of the case law in this circuit talks about, which is one in which the defendant affirmatively says he's innocent. We're not dealing with that situation. We're dealing with a different situation where he simply says, I cannot admit to a particular element, but I'm not maintaining my innocence. So I'm not sure that O'Brien necessarily can prove it. Why isn't that a no-law plea, then? Thank you, Your Honor? Why isn't it what he did a no-law plea? Well, because he said, I want to plead guilty, and there's sufficient evidence in the record for me to plead guilty. He's not — he's not saying, I'm not sure. He's simply saying, I can't admit that element. There's sufficient proof, and I want to plead guilty. One last thing. The defense lawyer kind of walked into all this. She did. And the question is, how does that play into our problem? I mean, she said there was no factual basis. Right. And to be perfectly honest, she screwed up. You know, she was wrong. All of the parties were wrong. Government counsel was wrong, defense counsel was wrong, the Court was wrong with respect to what was required. But Mr. Neal himself was there in front of the Court, and regardless of what defense counsel said, Mr. Neal said, I want to plead guilty, and there is sufficient evidence in the record to establish this element that I cannot admit. So regardless of what defense counsel may have said to the Court, Mr. Neal himself stepped up and said, this is how it should be, and I think that trumps whatever mistake defense counsel took. So just to take that one step further, so if you've got the defendant saying, I want to plead guilty, I agree there's evidence in the record, and then you've got the defense counsel saying at the same time as she did, I don't think there's a factual basis. So what would have happened if the judge would have said, forget about you, defense counsel, I'm taking this guy's guilty plea? I mean, wouldn't we have exactly, there would still be an appeal, right, to the person was, you know, pled guilty over the objections of their lawyers? My point is, what's the judge supposed to do in that situation? Mr. Neal would not have appealed. I mean, that's all I can say. He would have gotten exactly what he asked for. So the Maybe, depending on what the sentence was. What's the judge supposed to do in that situation where you have the defendant saying, I want to plead guilty, and the lawyer saying, I don't think there's a factual basis? Well, I think as we've established, the lawyer was just wrong in the law. So I think if the Court followed the law correctly, then he was obligated to take the plea. And that's kind of where we're left. What are the consequences of all this for this case? Well, and what we're dealing with here, and I apologize to the Court because I did make it clear in the briefs, as I read about the briefs. We're dealing with a binding plea agreement here. So the defendant was going to receive a binding plea to 51 months, which is what the guideline range would have been, and he was going to get the low end of the guideline range. So we're dealing with a 51-month sentence. Ultimately, because he went, the Court would not accept his plea, and he went to four levels for the fast track. He lost the three levels that he would have gotten for acceptance, so the parties agreed he was entitled to two levels for acceptance. The Court ultimately imposed a 70- Can anybody argue to the judge that he should have gotten the same sentence that he would have gotten to begin with because he tried to plead guilty? Can anybody argue to the judge at the sentencing that he should have? I mean, that seems to me to be the logical answer to all this, is that if you're going to force him to trial, you then don't change the sentence. If he's concluded to be guilty. But nobody argued that. No. Defense counsel, I believe, asked for a 60-month sentence, which is still nine months more than what the fast-track plea would have been, I think. What she was trying to say is, look, you know ---- But even now, you're not making that argument here, that the sentence was unreasonable because it should have been the same sentence. No. We're not making that argument. But we are saying that if, in fact, this goes back and he's entitled to the benefit of his binding plea agreement, then he would get a 51-month sentence as opposed to the 72-month sentence that was ultimately imposed. And on that, I thank the Court. Good morning. May it please the Court. Daniel Levin on behalf of the government. I'd like to just start with what happened at the beginning of this hearing and walk through, because the way this hearing started is defense counsel stood up and said there was uncertainty as to the factual basis. There's then quite a long exchange that goes on for more than 10 pages about what the state of the factual basis might be. The defense counsel talks about there are these documents, these Belizean documents, and also indicates there's some issues with them. There's documents in two names, Neel and Alvarez. They've received a picture of Neel that was sent from Belize, which isn't the defendant. There is some issue about whether there was fingerprint matching. That's all true. But ultimately, the government obviously had a factual basis. They want a trial. And if somebody had asked, what's your factual basis, they could have said so. Well, the Court does — I agree, Your Honor. Of course, ultimately, the government had a lot of evidence in this case. And the Court — this is abuse of discretion. And the Court could have, within its discretion, I think, taken the plea and said, I want some kind of submission from the government or whatever, done various things. The Court has that discretion, I believe. The question is whether it was obligated to do that. And the Court does turn to the government at one point. I believe it's on page 14 of the excerpts. This is after going back and forth with the defense counsel and asked the government, were there admissions? And what the attorney says is, the government doesn't have the transcripts from the deportation hearings at that point. But there was an admission in 2009 when the defendant was arrested in the case. So that's proffered. So what you have is this proffer of the 2009 admission. You obviously have the defendant did sign the plea agreement. At the same time, you have the defendant walking away from those admissions. Maybe not disavowing them, but certainly walking away from them. And not just walking away from them, but raising issues. The defendant says, I'm circumcised, he's dark-conflicted, which doesn't fit with the name. The issue isn't whether he has a defense. The issue is whether the government has a factual basis, right? Well, the issue is whether the Court is satisfied with the factual basis. In the Court, I mean, the government ultimately did have the facts here. But whether at this hearing the Court is satisfied with the factual basis, there's not much to go on. And I think had the Court taken the factual basis here, it would have been taken over three statements from defense counsel that there was no factual basis. They get progressively stronger by the time you get to, I think it's page 15. Because she seems to be under the impression that there has to be an admission from the defendant, and the judge seems to be under the impression that there has to be an admission from the defendant. And I gather it's common ground that that's not true. I agree with the second part. That's not true. It's clear under this Court's case law, you find the factual basis from other things. But I don't agree, Your Honor, with the first part, because the defense counsel is talking about these documents for quite a while in casting doubt on them. So it's not that the defense counsel and the Court are not entirely focused on the admission. In the context of this case, I think the way to read this, I think to give Judge Walter some benefit that he understood the law, when he says, I need an admission from the defendant, it's in this context, without this admission, the judge really has very little at this hearing to support finding a factual basis. He could have said I need an admission from the defendant, or he could have said I need to know what the government's factual basis is. So it didn't need an admission from the defendant. Well, Your Honor, and again, he does turn to the government, and he gets this additional proffer of this. That's the one question. He only asked the question of factual basis. I agree. Your Honor, within his discretion, he could have done more. The question is, was he required, was it an abuse of discretion not to say, government, go get those transcripts and let's reconvene? I guess this is the question. Why not? What was at stake, as it turns out, and it was obvious at that point, was several years in jail for the defendant. That's what we're talking about. Let me make two points about that. First is, this wasn't a case like Mancini v. Flores, where the court says, no plea, bring in the jury. It was a month went by until the trial happened. The defendant didn't come back and say, now we've reviewed all the discovery. We want to go back to this. Of course, now the government can proffer everything. We have these deportation hearing transcripts and so forth. The defendant never comes back to wanting to plead. The second point is, in terms of the consequences, when Judge Walter sentenced this defendant, he knew exactly how this was going to end. He knew everything that had happened. He had discretion to give any sentence he wanted. This isn't a case where there was a charge bargain, Mancini v. Flores, where by the fact of going forward, the defendant was subject to a felony as opposed to a misdemeanor, or subject to a mandatory minimum, or subject to even a heightened statutory maximum. The exact same 1326 charge that was there all along. The court has all the discretion. And by the way, it's a binding plea agreement. Had it gone forward into the binding plea agreement, the government would have recommended 51 months. The defense would have recommended it. And the court would have had discretion whether or not to accept the binding plea. And we don't know, we just don't know whether Judge Walter would have done that or not. But it's not true to say what automatically would have followed is a 51-month sentence. That's just not correct. So I think, but it's very difficult to draw a line to say, because the plea hearing went south, the defendant necessarily went from 51 to 72 months. What, just hypothetically, what would you think the defendant argues that the remedy, if we agreed with him, and putting aside for the moment now the possibility of a Macinus Flores remand for clarification, would be that he would get the plea agreement. Is that true? Would the government now have a choice whether to stand by its plea agreement or not? I think perhaps, because I wanted to discuss remedy because we don't address it in our brief, the remedy, the defendant said the conviction should be vacated. That's not right under Macinus Flores. Macinus Flores would say what should happen is it should go back to permit the defendant to enter a guilty plea. And if he can, if the court then accepts the guilty plea, if he can get through the Rule 11 colloquy, at that point, he would then proceed to sentencing pursuant to the guilty plea. Your Honor, I think there would be a real question whether there would have been a breach here. The government has discussed this. In this case, the government would stand behind the binding plea agreement were it to go back. I think in this case, the government would stand behind the plea agreement. I think there is an issue about whether or not there'd been a breach if the defendant doesn't go forward and plead guilty as set forth in the plea agreement. That's the operative language. But in any event, the government would be comfortable here making that recommendation were the court to say that the district court abused its discretion. But again, the court, of course, wouldn't be bound by that. The court could say, not accepting the Rule 11, I'm going to go forward on the conviction from trial, and the court would then be operative. So your position is that the judge, district judge, didn't take the plea because he didn't think there was a factual basis? Correct. Okay. Now, presumably, the government wouldn't have entered into the plea agreement just based on the bare admission of the defendant. I mean, government, generally speaking, doesn't do that. You had something else. So let's say that the judge had asked the question fully at the hearing. What would the government have said it had besides the stipulation? The hearing, the government, I mean, the government had a file and could have pointed to the evidence out of the prior admission. Yeah, the 2009 prior admission, it had the fact of the prior deportations, but not the hearing transcripts hadn't yet been prepared. So it didn't have, and one of the things that came out of the trial is these transcripts were, the deportation hearings were played. Judge Wolter actually comments at one point on the thoroughness of the whole exchange in the 96th deportation hearing. Okay. So the point is that there was other evidence. Correct. Okay. Including the birth certificate? Excuse me? Including the birth certificate? That was in the A file and was introduced at trial. Yes. So if your position is that the judge didn't take the plea because there was no factual basis, and we conclude that's wrong, there was a factual basis, then what's the remedy? Weren't you to, isn't the remedy to say, judge, there was a factual basis, take the plea? Yes. I think, well, I think the remedy is to say, remand, that there was an abuse of discretion, and again, obviously we don't agree with that, but there would be, there would be, it was an abuse of discretion not to accept the factual basis, and there should there be a Rule 11 hearing, and if the defendant can successfully complete it, and you would have instructed it as a factual basis, but the formalities would have to be complied with and so forth, and once the court, assuming the court does, accepts the plea, then it would proceed to sentencing pursuant to the plea. But the conviction would never be vacated, because I guess what the government wants to avoid, and what Mancinas-Flores talks about avoiding in this D.C. Circuit case that Mancinas-Flores cites Maxwell, is a situation where you get back and all of a sudden it goes south of the Rule 11 for some other reason. When the conviction has been vacated, we have a second trial for no point. I mean, that's, that would be a possibility. So you would say remand with instructions to do a new plea hearing, basically? Correct. I mean, if, if, the opposite way, right? Your Honor, if there's nothing further, all I would say is, this is an abuse of discretion review. This was a district judge who was confronted with defense counsel saying, there's no factual basis. The court agreed with that, ultimately, and went forward in its sentencing. It had all the discretion to make up for this. It knew exactly what had happened. Thank you. Why, from our point of view, since that's one version of what happened. And another version was he thought he couldn't accept the plea without the admission. Why isn't the Mancinas-Flores remedy the best remedy? Go back and ask him. I, I just don't think the Mancinas-Flores, what happened in Mancinas-Flores, there was nothing. There was no explanation. It was very abrupt. He just said, I'm not taking the plea. I think it's clear why Judge Walter did what he did, that he, that he didn't believe there was a factual basis. I, I suppose if the court believes that it, it needs more explanation from him, it, it'd certainly ask and, and, and have some sort of limited remand proceeding for, for further explanation. But I, I do think that when you look at this as a lengthy hearing, this is a careful district court judge, and I think he, he was within his discretion in acting the way he acted. Let me ask you this. Does the factual basis have to appear in the record, or is it enough that the government has a factual basis? It has to be on the record because the court has to find it. It's not enough, certainly not enough for the judge to turn to the court, turn to the government attorney, and the attorney to say, your honor, I have this big box of story, we can prove it. I mean, that's not, the court has to know about it. Do you think there is a factual basis in the record? At the Rule, at the Rule 11 hearing, I think, I think there's a, what I, what I would say is, I think there's a real question if the court had said that's enough, whether it would be in its discretion. It's, it's a, it's a use of discretion, so obviously it's a broad standard. But I think it's a very close question whether there was, whether there was even enough under that standard. But there's no doubt that there could have been, and he asked the government. There's, there's no doubt that the government could have put in, eventually put in all of its trial evidence. I mean, eventually. I mean, they had it there. I mean, the defendant said they have a birth certificate, and that's why I'm pleading. And they did have the birth certificate with them. Yes. He could have, he could have looked, they could have looked at it, but on the same, on the same token, the defense is saying there are these issues about fingerprint matching and so forth. In, in trial, there was cross-examination on this issue. There was a, a, the, the, a It has to be beyond dispute. Or when you look to see if something's in the record and you see a birth certificate, can you say that's sufficient, even though the defense disputes its accuracy? You, you probably could, you're right. It doesn't have to be beyond dispute, and you might well be able to say, I'm satisfied. But I, I don't think, the flip side is, I don't think it's an abuse of discretion to say, I'm not satisfied because there's two names here. There's issues about these two names. The court has to have some leeway to be able to make a determination whether it's satisfied. And this is, I mean, this is not, this is a rule that cuts both ways. When a court is concerned about the factual basis, what it's saying is, it's putting the government to its burden. I mean, that, that's a, that's protective, generally, of a defendant's rights. It's not just, oh, we, he loses the benefit of, of, of a deal. I mean, so this is, this is a, an issue that, that is cutting, cutting both ways in terms of, in terms of when a court is, you know, has concerns about a factual basis. Do you think there is such a thing as an Alfred plea? The Supreme Court has said so, Your Honor. And I guess what this Court has said is, Rule 11 doesn't carve out an, an Alfred plea. It has, it has no-load pleas, and it has guilty pleas. And I, I, what the Court has said, essentially, is an Alfred plea is a species of guilty plea where a defendant both pleads guilty and protests his innocence. And I, I suppose that's sort of an existential question. And therefore, perhaps, although our law, our case law is murky, the judge does not have discretion to reject it except if the Rule 11 standards are met. But he can't reject it just because. The way I would, O'Brien says he has discretion, and Vasquez-Ramirez says if Rule 11 is satisfied, must accept it. And if cites O'Brien positively, I think, in either one, Vasquez-Ramirez is not an in-bank case, and he can't overrule O'Brien. The way I would reconcile, and I agree that there's tension. The way I would reconcile them is to say, what O'Brien is saying, essentially, is a district court has some kind of, essentially, inherent discretion to be unsatisfied with the factual basis where a defendant is standing up and saying that he's innocent. And that that, essentially, is, so that it is a factual basis issue. That's the best I can do in terms of. Kagan That's always true in an Alfred plea. So he always has the authority to reject it, is what you're saying. I mean, O'Brien says he always has the authority to reject it. And the way, I suppose, I would reconcile O'Brien with Vasquez-Ramirez is to say, what he's really saying is Rule 11 isn't satisfied. The court would be within its discretion to say Rule 11 isn't satisfied if a defendant is protesting that he or she is innocent. But there is tension. Kagan I have an arcane question, just in case you know the answer. In her dissent in Messina's floor, I guess, Judge Rummer relies on this 1974 committee comment to Rule 11, which says an Alfred plea is actually a no-law plea. And what as far as I can tell, that was from before the rule was amended to say that you, to leave out the language about there being discretion for a guilty plea. But is that, I couldn't quite tell what happened in 74 and 75 and whether that was actually so. My understanding, Your Honor, is that the amendment was in 75 that took out the language. Previous to that, there had been a sort of inherent discretion in Rule 11. And that was deleted, I believe, into the 75 amendment. I don't know. I believe they're separate, but I don't know whether the 74 note was actually promulgated, and then the amendment was – went out and the amendment was adopted in 75. I couldn't tell either. I was confused. I'm sorry, I don't know the answer to the legislative history on that one. But in any event, I think that's – there is a way to reconcile O'Brien and Bastos-Ramirez, I think. But that's the state of the law as well. Thank you, Your Honor. I know I was out of time, if I could just briefly, again, the factual basis doesn't have to come from a profit from the government. What the advisory committee notes to Rule 11 make clear, and I'm quoting, an inquiry may be made of the defendant, of the attorneys for the government and the defense, of the present report when one is available, or by whatever means is appropriate in a specific case. Is it must or may? Well, I don't know. It says an inquiry might be of. So the court can glean whatever information it – Is it an abuse of discretion not to obtain that information? I'm not sure, Your Honor. I mean, I think in this case, though, there was sufficient evidence that was already there provided by the defendants with respect to the birth certificate. And based on the other things in the record that the government had already brought up with respect to his prior deportations and the admission he made to immigration authorities. So based on that, the information was there. Unless the court has additional questions, I'll submit. Thank you, Your Honor. Thank you. Case 5-3, unit submitted.
judges: Kennelly, Reinhardt, Berzon